UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SCOTT J. HUGHES | CIVIL ACTION |
| VERSUS | NO. 11-494 |
| SHAW ENVIRONMENTAL, INC., ET AL | SECTION "N" (2) |

### ORDER AND REASONS

Presently before the Court is Defendant Shaw Environmental, Inc.'s Motion for Summary Judgment on Maintenance and Cure (Rec. Doc. 23). Having carefully reviewed the parties' written submissions, and heard oral argument regarding the motion on February 8, 2012, **IT IS ORDERED**, for the reasons stated herein, that the motion is **DENIED**.

### BACKGROUND

Plaintiff's claims against Defendant Shaw arise from injuries to his back and neck he allegedly suffered when he slipped and fell on December 8, 2010 while working for Shaw. With the instant motion, Shaw seeks dismissal of Plaintiff's claim for maintenance and cure under *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547 (5th Cir. 1968) and its progeny. Specifically, Shaw argues that it should be relieved of any maintenance and cure obligation because, it contends, Plaintiff willfully and intentionally concealed back and neck injuries that he had suffered prior to commencing employment with Shaw.

## LAW AND ANALYSIS

**I.     Summary Judgment Standard**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(a), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir.

2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *See* Fed. R. Civ. P. 56(c)(3)("court need consider only the cited materials"); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

## II. **Application**

Under *McCorpen v. Central Gulf S.S. Corp.,* 396 F.2d 547 (5th Cir.1968) and its progeny, a seaman who willfully conceals a prior injury from his employer may not recover damages for maintenance and cure if that injury is later reactivated or aggravated. To prevail on this defense, the maritime employer must prove that: (1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit. *See, e.g., Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005); *Johnson v. Cenac Towing, Inc.*, 599 F. Supp.2d 721, 725 (E.D. La. 2009)(Vance, J).

In support of its motion, Shaw points to a "Post-Hire Medical Questionnaire" completed by Plaintiff on which he checked "No" to every question, including those inquiring about prior back or neck injuries, despite having received treatment for a number of back and neck injuries prior to his employment with Shaw. In opposing Shaw's motion, Plaintiff does not disagree that he answered the questionnaire inaccurately. Rather, he contends that there is an issue of material fact as to whether he truly concealed his prior back problems and whether such a concealment was intentional. Specifically, in his deposition testimony, Plaintiff explains that he had orally informed at least two Shell employees, Garvin Pittman and John Lambou, of his prior injuries when he was hired and again discussed them with Lambou when he was given the questionnaire to complete.[1]

---

[1] According to various defense submissions, Plaintiff completed an on-line employment application for Shaw on March 22, 2010, was thereafter interviewed by Shaw personnel, and then was hired on or before April 1, 2010. The medical questionnaire at issue, however, was signed by Plaintiff on April 26, 2010, but reportedly not returned to Shaw until April 28, 2010, *i.e.* after Plaintiff was hired and had started working. *See* January 9, 2012 Pittman

Given that, he contends that he did not actually conceal any medical facts (or at least not intentionally) from Shaw and, in any event, that the questionnaire was not material to Shaw's hiring decision.

Applying the *McCorpen* test here, the Court finds that Shaw has met its burden relative to the first and third elements. The first element, "intentional concealment," is determined based on an objective, not subjective standard. *See, e.g, Brown*, 410 F.3d at 174. Specifically, it is present if medical information is disclosed in an interview or questionnaire that is obviously designed to elicit such information. Here, the form in question, the "Post-Hire Medical Questionnaire" that Plaintiff completed, warns, at the top of each page, in all capital letters and bold text, of a possible fine, imprisonment and loss of benefits, pursuant to La. R.S. 23:1208 and 1208.1, for a failure to answer any of the questions truthfully, and additionally requires the person completing the form to sign and date each page.[2] Thus, applying this objective test, intentional concealment is present regardless of what Pittmann and/or Lambou allegedly told Plaintiff in response to inquiries about the questionnaire.

With the third *McCorpen* element, which requires a connection, or "causal link," between the withheld information and the injury complained of in the lawsuit, it is enough for the employer to show that the old and the new injuries "were to the same location," *i.e.* body part. *See Johnson*, 599 F. Supp.2d at 728-29 (citing *Brown*, 410 F.3d at 175-76). Here, the parties' submissions reflect that Plaintiff's present complaints concern the same body part – the same back

---

Affidavit at ¶¶ 11-13, and Exhibit 3 thereto (Rec. Doc. 23-4); Supplemental Pittman Affidavit at ¶¶ 4-7 (Rec. Doc. 38-1); January 23, 2012 Lambou Affidavit, at ¶¶ 16-18 (Rec. Doc. 35-1).

[2] *See* "Post-Hire Medical Questionnaire," January 9, 2012 Pittman Affidavit at ¶¶ 12-13, and Exhibit 3 thereto (Rec. Doc. 23-4).

area that he previously injured but did not identify on the Shaw questionnaire. Thus, the third element of the test likewise has been satisfied.

On the present showing made, however, the Court finds Shaw's position regarding the second element of *McCorpen* test – the materiality of the undisclosed facts to the employer's decision to hire the claimant – to be insufficiently supported by competent Rule 56 evidentiary material to warrant a pre-trial summary ruling in its favor.[3] It is undisputed that Shaw did not have Plaintiff complete the questionnaire at issue until shortly *after* he had been hired.[4] Nor has Shaw presented evidence demonstrating that the offer of employment was expressly conditioned upon Plaintiff later answering a medical questionnaire, undergoing medical testing, etc. And, though the "warning" language on the form advises of possible penalties under Louisiana worker's compensation statutes, including loss of those compensation benefits, it does not state that a misrepresentation will or could result in termination or a change in job duties.[5]

Shaw likewise has not provided any evidence of the applicable policies and procedures employed by it when a prior injury or condition is reflected in the questionnaire, including when, for instance, an employee would be required, or allowed, to answer additional questions, provide a prior treating physician's release for work, or perhaps undergo a medical

---

[3] In so finding, the Court emphasizes that its ruling is limited to the facts and posture of this particular matter at this specific juncture of the proceeding. This ruling in no way presages Shaw's inability to prevail at trial on this issue, provided that it can sufficiently bolster the evidence offered in support of its position.

[4] Shaw's reply memorandum (Rec. Doc. 38) states that it is Shaw's practice to seek this type of information shortly after an employee is actually hired, rather than before, to ensure compliance with the Americans with Disabilities Act.

[5] *See* "Post-Hire Medical Questionnaire," Exhibit 3 to January 9, 2012 Pittman Affidavit (Rec. Doc. 23-4).

examination to ensure the employee's fitness for the requirements of his job position. While both Pittmann and Lambou represent, in their affidavits, that Plaintiff would not been allowed to work as a "Technician" if he had acknowledged on the questionnaire "that he had experienced previous back or neck problems to such a degree that he had received medical treatment for such injuries, including numerous medical examinations, diagnostic studies and prescription medications,"[6] neither explains the bases, or provides documentary support, for these conclusory assertions.

Further, Plaintiff contends that, prior to being hired, he discussed his prior injuries with both Pittmann and Lambou, and then with Lambou at the time he completed the questionnaire, and was told that a past injury did not matter as long as he presently was fit for the job and could successfully pass a drug test.[7] Similarly, at least as of the time that he completed the questionnaire, Plaintiff contends that, because of his prior experience as an airboat operator, and a former Shaw operator's leaving Shaw because of available British Petroleum *Deepwater Horizon* oil spill work, Pittmann and Lambou just wanted Plaintiff's paperwork completed as soon as possible so that he could "get in the field."[8] Although Pittmann and Lambou deny these assertions, and insist that they

---

[6] *See* Supplemental Pittman Affidavit at ¶9 (Rec. Doc. 38-1); January 23, 2012 Lambou Affidavit, at ¶20 (Rec. Doc. 35-1).

[7] *See* Transcript of Plaintiff's August 30, 2011 Deposition ("Plaintiff's Dep.") at pp. 127-40 (Rec. Doc. 29-1).

[8] *Id.* at pp. 131, 133-36, 139-40. The parties' written and oral submissions disagree regarding the importance of the oil spill to Plaintiff's hiring. Specifically, Shaw maintains that Plaintiff was hired before the date that the spill occurred. Although that appears true, it seems that Plaintiff completed the questionnaire, and allegedly discussed its inquiries with Lambou, a number of days after the April 20, 2010 event. *See* Plaintiff's Depo. at pp. 127-40; *see also* "Post-Hire Medical Questionnaire" dated April 26, 2010, but purportedly not returned to Shaw until April 28, 2010, Exhibit 3 to January 9, 2012 Pittman Affidavit (Rec. Doc. 23-4); *id.* at ¶13; Supplemental Pittman Affidavit at ¶6 (Rec. Doc. 38-1); January 23, 2012 Lambou Affidavit, at ¶18 (Rec. Doc. 35-1).

were never told this information,[9] resolving these disputes appears to rest, in significant part, upon credibility determinations that can be made only by the trier-of-fact at trial.

Accordingly, as stated herein, the Court denies Defendant's motion.

New Orleans, Louisiana, this 6th day of March 2012.

_____
KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE

---

[9] *See* Supplemental Pittman Affidavit at ¶¶11-12 (Rec. Doc. 38-1); January 23, 2012 Lambou Affidavit, at ¶¶22-23 (Rec. Doc. 35-1).